IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
Civil Action No. _____

| | | |
|---|---|---|
| SANDOOL INVESTMENTS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | **(JURY TRIAL DEMANDED)** |
| CITY OF STATESVILLE and | ) | |
| IREDELL WATER CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

NOW COMES Plaintiff Sandool Investments, LLC, complaining of Defendants, and alleges as follows:

## PARTIES

1. Plaintiff Sandool Investments, LLC ("Plaintiff" or "Sandool") is a North Carolina limited liability company, with its principal place of business in Statesville, Iredell County, North Carolina, and is engaged in the acquisition and development of real property.

2. Defendant City of Statesville ("Statesville") is a North Carolina municipal corporation organized under the laws of the State of North Carolina.

3. Defendant Iredell Water Corporation ("IWC") is a North Carolina non-profit water corporation providing water services in portions of Iredell County.

## JURISDICTION AND VENUE

4. This Court has personal jurisdiction over the parties.

5. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff asserts claims arising under federal law, including claims arising under 7 U.S.C. § 1926(b), 7

C.F.R. § 1942.17, and related USDA Rural Development regulations governing federally indebted rural water borrowers.

6. This Court has supplemental jurisdiction over Plaintiff's related state-law claims under 28 U.S.C. § 1367(a) because they form part of the same case or controversy as the federal claims.

7. Venue is proper in the Western District of North Carolina, Statesville Division, because the property at issue is located in Iredell County and the acts complained of occurred therein.

## FACTUAL ALLEGATIONS

8. Sandool owns approximately 44.644 acres of real property located within Iredell County (the "Property"). The Property is presently located within the municipal limits of Statesville.

9. Sandool purchased the Property on February 28, 2017 pursuant to a deed recorded at Book 2476, Page 1260 of the Iredell County Registry of Deeds.

10. Prior to Sandool's acquisition of the Property, Morrison Family Limited Partnership ("Morrison") had entered into a contract with South Creek Development ("South Creek") concerning the acquisition and residential development of approximately 22 acres of the Property.

11. The contract between Morrison and South Creek was contingent upon the availability of municipal sewer and water services from Statesville for the contemplated development.

2

12. Sandool was aware of the contract between Morrison and South Creek prior to purchasing the Property and acquired the Property subject to and as successor-in-interest to Morrison's rights and obligations relating thereto.

13. The existence of the South Creek development contract and the expectation that Statesville would provide municipal sewer and water services for development of the Property were material factors in Sandool's decision to acquire the Property.

14. Prior to Sandool's acquisition of the Property, the Property was located outside the municipal limits of Statesville.

15. Prior to purchasing the Property, Sandool and/or its agents communicated with representatives of Statesville concerning the future availability of municipal utility services to the Property in the event the Property were annexed into the city and appropriately rezoned.

16. Statesville, through its officials, employees, agents, and/or representatives, represented to Sandool and/or its agents that, if the Property were annexed and rezoned into Statesville, Statesville would provide municipal water, sewer, and fire flow services to the Property.

17. Statesville intended, or reasonably should have expected, that Sandool would rely upon such representations in determining whether to acquire and develop the Property.

18. Beginning prior to Sandool's acquisition of the Property and continuing thereafter through at least April 2024, Statesville, through its officials, employees, agents, departments, and public utility personnel, repeatedly represented and reaffirmed that integrated municipal sewer, potable water, and fire flow services would be available for residential development of the Property.

3

19.   These representations and reaffirmations were made repeatedly over a period of years in connection with Sandool's acquisition, annexation, rezoning, marketing, contracting, and residential and commercial development efforts concerning the Property.

20.   Upon information and belief, Statesville owns, operates, maintains, extends, and manages municipal water, sewer, and related utility infrastructure serving customers within and around the City of Statesville.

21.   Upon information and belief, Statesville charges fees, rates, connection charges, capacity fees, and other compensation in connection with the provision of municipal utility services.

22.   The representations, communications, utility commitments, and utility-service determinations described herein arose in substantial part from Statesville's operation and administration of its municipal utility system and its provision of utility services to customers.

23.   To the extent Statesville's conduct described herein arose from the ownership, operation, management, extension, or provision of municipal utility services, such conduct was proprietary in nature.

24.   At no time prior to the April 22, 2024 Letter to Serve did Statesville or IWC inform Sandool that unified integrated municipal utility service allegedly would not be provided to the Property for residential or commercial development.

25.   Sandool purchased the Property in February 2017 in reliance upon Statesville's representations, and because of such representations.

26.   But for Statesville's representations regarding the future provision of municipal utility services, Sandool would not have purchased the Property.

4

27. The initial South Creek contract subsequently expired, and on or about December 13, 2017, Sandool entered into a new contract with South Creek concerning the acquisition and development of portions of the Property.

28. Statesville was aware of the contractual relationship between Sandool and South Creek and of South Creek's intention to develop portions of the Property utilizing municipal sewer and water services from Statesville.

29. On or about April 16, 2018, Statesville Public Works issued a Letter to Serve to South Creek confirming that Statesville had adequate capacity to provide sewer and water services for the contemplated development of the Property. (A copy of the April 2018 Letter to Serve is attached as "Exhibit A.")

30. Upon information and belief, Statesville knew or reasonably should have known that the April 16, 2018 Letter to Serve would be provided to and relied upon by Sandool in connection with Sandool's continued annexation, rezoning, marketing, and development efforts concerning the Property.

31. South Creek provided the April 16, 2018 Letter to Serve to Sandool.

32. Sandool relied upon the April 16, 2018 Letter to Serve in continuing to pursue annexation, rezoning, marketing, and residential and commercial development of the Property.

33. The South Creek transaction ultimately did not close because South Creek was unable to obtain certain tax credits necessary for its proposed development, which was unrelated to the availability of municipal sewer and water service from Statesville.

5

34.     On or about January 15, 2019, Sandool entered into an agreement with PK Development concerning the acquisition and development of approximately 10 acres of the Property for a purchase price of approximately $450,000.00.

35.     The PK Development agreement was contingent upon the availability of municipal sewer and water service from Statesville for the contemplated development.

36.     Sandool reasonably believed that municipal sewer and water service from Statesville would be available for the contemplated development based upon the April 16, 2018 Letter to Serve, ongoing representations by Statesville officials, and Statesville's continuing encouragement of annexation, rezoning, and development efforts concerning the Property.

37.     During the option period, Sandool obtained information indicating that the value of the 10-acre tract would substantially exceed the contemplated purchase price if integrated municipal sewer, potable water, and fire flow services from Statesville remained available for development.

38.     Sandool therefore attempted to renegotiate the transaction with PK Development at a higher purchase price.

39.     PK Development declined the revised terms and the transaction did not close.

40.     At the time the PK Development transaction terminated, the settlement agreement between Statesville and IWC had not yet been finalized, and Sandool remained unaware of any alleged restriction upon the availability of unified integrated municipal utility service to the Property.

6

41. Had Sandool been informed that unified integrated municipal utility service would later allegedly not be provided to the Property, Sandool would not have delayed or attempted to renegotiate the PK Development transaction.

42. Following its acquisition of the Property, Sandool undertook substantial efforts and expenditures to obtain annexation, rezoning, engineering approvals, and development entitlements for the Property in reliance upon Statesville's representations that integrated municipal sewer, potable water, and fire flow services would be provided for residential and commercial development of the Property.

43. The direct and immediate consequence of annexation of the Property into Statesville was the imposition of higher municipal property taxes upon the Property.

44. The anticipated availability of integrated municipal sewer, potable water, and fire flow services for residential and commercial development of the Property was the principal reason Sandool pursued annexation of the Property notwithstanding the increased municipal tax burden associated therewith.

45. Following annexation, Sandool continued to pursue rezoning and development approvals for the Property in reliance upon Statesville's continuing representations and confirmations concerning the future availability of integrated municipal sewer, potable water, and fire flow services.

46. In reliance on Statesville's representations, Sandool expended substantial sums of money, including costs associated with annexation, rezoning, engineering, and development planning.

7

47. Statesville was aware that Sandool intended to develop or sell the Property for residential and commercial development and that access to municipal water, sewer, and fire flow services was essential to such development.

48. On or about June 23, 2023, Statesville and IWC finalized a settlement agreement concerning utility service territories and utility service rights within portions of Iredell County.

49. Sandool was not a party to the settlement agreement, did not participate in the negotiation thereof, and did not consent to its terms.

50. Upon information and belief, up until approval of the settlement agreement, Statesville continued to encourage, permit, and facilitate Sandool's annexation, rezoning, marketing, contracting, engineering, and residential and commercial development efforts concerning the Property without informing Sandool that Statesville allegedly would not provide unified integrated municipal utility service to the Property.

51. Upon information and belief, Statesville knew or reasonably should have known that Sandool was continuing to expend substantial sums and pursue development of the Property in reliance upon the expectation that unified integrated municipal utility service would ultimately be provided from Statesville's immediately adjacent infrastructure.

52. Upon information and belief, the settlement agreement purported to restrict Statesville's ability to provide municipal potable water service to the Property notwithstanding Statesville's prior utility representations, confirmations, and development-related communications concerning the Property.

53. In or about March 2024, during due diligence conducted in connection with a proposed development transaction involving the Property, Sandool first became aware of potential

8

issues concerning utility service to the Property and the possible existence of an agreement between Statesville and IWC affecting utility service rights.

54.     In response thereto, Sandool sought clarification from Statesville concerning whether unified integrated municipal utility service would be available to the Property.

55.     On or about April 22, 2024, in connection with Sandool's ongoing efforts to market and develop the Property, Statesville issued a Letter to Serve informing Sandool that Statesville would provide sewer service to the Property, but that potable water service allegedly would instead need to be obtained through IWC pursuant to the settlement agreement between Statesville and IWC.  (A copy of the April 2024 Letter to Serve is attached as "Exhibit B.")

56.     Prior to issuing the April 22, 2024 Letter to Serve, Statesville had not informed Sandool that the settlement agreement allegedly restricted Statesville's ability to provide integrated municipal potable water service to the Property notwithstanding Statesville's prior representations, confirmations, and development-related communications concerning integrated municipal utility services for the Property.

57.     The April 22, 2024 Letter to Serve represented that Statesville would provide sewer service to the Property, that potable water service allegedly would need to be obtained through IWC, and that fire protection service potentially could be provided by Statesville pursuant to life-safety provisions contained within the settlement agreement.

58.     The April 22, 2024 Letter to Serve was the first time Statesville informed Sandool that Statesville allegedly would not provide unified integrated municipal utility service to the Property and that potable water service allegedly would instead need to be obtained separately through IWC.

9

59. Prior to the April 22, 2024 Letter to Serve, Statesville had not informed Sandool that unified integrated municipal utility service allegedly would not be provided to the Property notwithstanding Statesville's prior representations, confirmations, and development-related communications concerning integrated municipal utility services for the Property.

60. Upon information and belief, IWC is and at all relevant times has been a recipient of loans, grants, guarantees, and/or other financial assistance administered by the United States Department of Agriculture Rural Development program.

61. Upon information and belief, IWC remains indebted to the United States through one or more USDA Rural Development loans and therefore receives the protections and benefits afforded by 7 U.S.C. § 1926(b).

62. Upon information and belief, IWC has asserted, both directly and through the settlement agreement described herein, that 7 U.S.C. § 1926(b), federal law, and IWC's federally protected service territory prohibit Statesville from providing potable water service to the Property.

63. Upon information and belief, IWC has claimed the Property lies within an area protected by 7 U.S.C. § 1926(b) and/or within IWC's exclusive service territory.

64. Upon information and belief, IWC has relied upon and asserted the protections of 7 U.S.C. § 1926(b) in connection with the Property and/or the settlement agreement described herein.

65. Upon information and belief, IWC's federally protected status carries corresponding obligations under applicable federal statutes, regulations, loan conditions, and Rural Development requirements concerning the provision of adequate service to persons located within IWC's service area who can feasibly and legally be served.

10

66. At or around the same time, IWC asserted that it held the exclusive right to provide water service to the Property.

67. IWC has not constructed water infrastructure adjacent to the Property capable of providing adequate potable water and fire flow service to the Property.

68. The nearest IWC water line is located approximately 3,500 feet from the Property.

69. Upon information and belief, IWC lacks sufficient infrastructure and/or pressure capacity to provide adequate fire flow service to the Property, such that fire flow service to the Property would still need to be provided by Statesville even if IWC were to provide potable water service.

70. Upon information and belief, existing Statesville municipal water infrastructure capable of providing potable water and fire flow service is located immediately adjacent to, and/or directly across the street from, the Property.

71. IWC has indicated that Sandool would be required to bear the substantial cost of extending water infrastructure approximately 3,500 feet to the Property, obtain property rights and/or easements from intervening landowners, and dedicate portions of the Property for well sites and related infrastructure.

72. These requirements are economically burdensome and materially impair the development potential of the Property.

73. As a practical matter, the positions asserted by Defendants would require fragmented, separate, and duplicative utility service arrangements for sewer, potable water, and fire flow service to the Property, which would be commercially unreasonable, economically impractical, operationally inefficient, and substantially more expensive than integrated municipal

11

sewer, potable water, and fire flow services from the immediately adjacent Statesville infrastructure.

74. Upon information and belief, integrated municipal sewer, potable water, and fire flow services from a unified utility system is standard and customary for residential and commercial developments of the nature contemplated for the Property, and requiring fragmented and duplicative utility service arrangements would materially impair the economic feasibility, efficiency, and marketability of such development.

75. The infrastructure and property dedication requirements imposed by IWC are substantially more burdensome and expensive than the costs that Sandool reasonably anticipated incurring in connection with obtaining municipal utility services from Statesville.

76. In reliance upon Statesville's representations and after substantial annexation, rezoning, engineering, and development efforts, Sandool actively marketed the Property for residential and commercial development.

77. As a result of those efforts, Sandool received one or more bona fide offers and entered into negotiations and agreements with prospective purchasers and developers concerning acquisition and residential and commercial development of the Property, all of which contemplated and depended upon the availability of adequate unified integrated municipal utility service.

78. Upon information and belief, the prospective purchasers and developers independently communicated with Statesville and/or IWC during their due diligence investigations concerning the availability of utility services to the Property.

79. In or about March 2024, after conducting due diligence concerning utility availability, a prospective purchaser and/or developer terminated negotiations and/or withdrew an

12

offer to acquire and develop the Property because adequate unified integrated municipal utility service could not be secured for the Property on commercially reasonable terms.

80. In or about October 2024, Sandool entered into an agreement for the sale and/or development of the Property with another prospective purchaser or developer.

81. In or about December 2024, after conducting due diligence concerning utility availability, another purchaser or developer terminated the transaction because adequate unified integrated municipal utility service could not be secured for the Property on commercially reasonable terms.

82. Upon information and belief, Defendants knew or reasonably should have known that the utility positions asserted concerning the Property would materially impair Sandool's ongoing development negotiations, contracts, marketing efforts, and residential and commercial development opportunities.

83. As a direct and proximate result of Defendants' conduct, Statesville's representations and confirmations, the restrictions imposed by the settlement agreement, the fragmented and commercially unreasonable utility conditions imposed by IWC, and Defendants' refusal to permit unified integrated municipal utility service from immediately adjacent Statesville infrastructure, Sandool has suffered damages including, but not limited to, acquisition costs, annexation expenses, increased municipal tax burdens, rezoning expenses, engineering and development expenditures, carrying costs, delay damages, impaired development feasibility, impaired marketability, lost development opportunities, loss of economically feasible residential and commercial development opportunities, increased infrastructure costs, and lost contractual and business opportunities relating to development of the Property.

13

84.     Many of Plaintiff's damages are continuing and ongoing in nature because the fragmented utility arrangement asserted by Defendants continues to impair the present and future residential development, financing, marketability, and economically feasible use of the Property.

85.     As a practical matter, the positions asserted by Defendants have left Plaintiff without access to reasonably practical, economically feasible, and unified integrated municipal utility service for residential and commercial development of the Property despite the existence of immediately adjacent Statesville infrastructure capable of providing such service.

86.     The representations, confirmations, utility-related guidance, development-related communications, and development activities described herein constituted a continuous and ongoing course of conduct extending through at least April 22, 2024.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment – Against All Defendants)**

87.     Sandool realleges the preceding paragraphs.

88.     An actual, present, and justiciable controversy exists between the parties concerning, among other things: (a) whether IWC has made reasonably practical, economically feasible, and developmentally sufficient potable water service available to the Property within the meaning of applicable federal law; (b) whether IWC may lawfully assert exclusive rights to provide potable water service to the Property while imposing conditions that render such service commercially unreasonable, economically impractical, or developmentally infeasible; (c) whether Statesville may provide potable water and fire flow service to the Property from its immediately adjacent infrastructure; and (d) the respective rights, obligations, and service responsibilities of the parties concerning utility service to the Property.

14

89. Sandool contends that IWC has not made reasonably practical, economically feasible, and developmentally sufficient potable water service available to the Property, that the conditions imposed by IWC render service commercially unreasonable and developmentally infeasible, and that Statesville may provide potable water and fire flow service to the Property from its immediately adjacent infrastructure.

90. Defendants dispute, or are reasonably expected to dispute, Sandool's contentions and assert rights, obligations, restrictions, and interpretations of federal law, the settlement agreement, and utility service responsibilities that are inconsistent with Sandool's position.

91. Sandool seeks a declaration of the parties' respective rights, obligations, and service responsibilities concerning the Property, including whether IWC has made reasonably practical, economically feasible, and developmentally sufficient potable water service available to the Property and whether Statesville may provide potable water and fire flow service to the Property from its immediately adjacent infrastructure.

92. Sandool is entitled to a declaration of its rights and the parties' obligations.

## SECOND CLAIM FOR RELIEF
### (Injunctive Relief – Against All Defendants)

93. Sandool realleges the preceding paragraphs.

94. Sandool will suffer immediate and irreparable harm absent declaratory and injunctive relief because Defendants' positions continue to impair and delay the economically feasible residential development, financing, marketability, contracting, and integrated utility servicing of the Property in ways that cannot be fully remedied through money damages alone.

95. Absent injunctive relief, Plaintiff will continue to incur increased carrying costs, increased municipal tax burdens, development delays, infrastructure uncertainty, impaired

15

financing opportunities, impaired marketability, impaired contracting opportunities, and loss of economically feasible residential development opportunities associated with the Property.

96. The utility uncertainty and fragmented utility arrangement asserted by Defendants materially interfere with Plaintiff's ability to market, finance, contract for, and pursue integrated residential and commercial development of the Property in the ordinary course of business.

97. Sandool seeks an order declaring the respective rights and obligations of the parties and further declaring that Statesville is not prohibited from providing integrated municipal sewer, potable water, and fire flow services to the Property from its immediately adjacent infrastructure and enjoining Defendants from preventing or interfering with such integrated municipal sewer, potable water, and fire flow services.

98. Plaintiff further seeks such temporary, preliminary, and permanent injunctive relief as may be necessary to permit practical and economically feasible integrated municipal sewer, potable water, and fire flow services to the Property during the pendency of this action and thereafter.

### THIRD CLAIM FOR RELIEF
**(Federal Claim Under 7 C.F.R. § 1942.17 – Against IWC)**

99. Sandool realleges and incorporates by reference all preceding paragraphs.

100. Upon information and belief, IWC is a federally indebted rural water borrower subject to the requirements, obligations, and protections arising under 7 U.S.C. § 1926(b), 7 C.F.R. § 1942.17, and related USDA Rural Development regulations.

101. Upon information and belief, IWC has asserted that federal law, federal loan protections, and/or the settlement agreement described herein grant IWC the exclusive right to provide potable water service to the Property.

16

102. By asserting exclusive rights to provide potable water service to the Property, IWC has likewise asserted that the Property lies within an area subject to IWC's federally protected service obligations.

103. Under 7 C.F.R. § 1942.17 and related Rural Development requirements, federally indebted rural water borrowers are obligated to provide adequate service to persons within their service area who can feasibly and legally be served.

104. Plaintiff desires potable water service for residential development of the Property and can feasibly and legally be served.

105. Despite asserting exclusive rights to provide potable water service to the Property, IWC has failed and refused to make adequate and reasonable potable water service available to the Property.

106. Among other things, IWC has:

   a. required Plaintiff to bear the cost of extending water infrastructure approximately 3,500 feet to the Property;

   b. required Plaintiff to obtain easements and/or property rights from intervening landowners;

   c. required dedication of portions of the Property for well sites and related infrastructure;

   d. failed to provide infrastructure capable of delivering adequate fire flow service to support the contemplated residential development; and

   e. imposed conditions that render service commercially unreasonable, economically impractical, and developmentally infeasible.

17

107. Upon information and belief, IWC has not obtained approval from the United States Department of Agriculture Rural Development to deny, refuse, or condition service in the manner alleged herein.

108. The conditions imposed by IWC are unreasonable and inconsistent with the obligations imposed upon federally indebted rural water borrowers under applicable federal law.

109. As a direct and proximate result of IWC's conduct, Plaintiff has suffered damages and continuing injury including increased development costs, impaired development feasibility, delay damages, impaired marketability, lost development opportunities, and other consequential damages well in excess of $75,000.00.

110. Plaintiff seeks declaratory and injunctive relief arising from IWC's obligations under federal law, including 7 C.F.R. § 1942.17.

111. Plaintiff is entitled to declaratory and injunctive relief requiring IWC to comply with its federal service obligations and prohibiting IWC from asserting exclusive federal protection while refusing to provide adequate and reasonable service to the Property.

## FOURTH CLAIM FOR RELIEF
### (Promissory Estoppel – Against Statesville)

112. Sandool realleges the preceding paragraphs.

113. Statesville made clear and definite representations to Sandool that, if the Property were annexed and rezoned into the city, Statesville would provide integrated municipal sewer, potable water, and fire flow services to the Property from immediately adjacent Statesville infrastructure.

114. Statesville reasonably expected Sandool, developers, purchasers, and parties involved in the residential and commercial development of the Property to rely upon such

18

representations and confirmations in determining whether to acquire, annex, rezone, market, contract for, and develop the Property.

115. Sandool did in fact reasonably rely upon these representations and confirmations by purchasing the Property, pursuing annexation of the Property into Statesville, accepting the increased municipal tax burdens associated therewith, pursuing rezoning and development approvals, entering into development contracts and negotiations concerning the Property, and expending substantial sums and undertaking substantial efforts in pursuit of residential and commercial development activities over a period of years.

116. Statesville knew or reasonably should have known that Sandool's acquisition, annexation, rezoning, marketing, contracting, and planned residential and commercial development of the Property depended upon the future availability of integrated municipal sewer, potable water, and fire flow services from immediately adjacent Statesville infrastructure.

117. Injustice can be avoided only through declaratory and injunctive relief permitting provision of integrated municipal sewer, potable water, and fire flow services to the Property from Statesville's immediately adjacent infrastructure and/or by awarding Plaintiff appropriate consequential damages.

**FIFTH CLAIM FOR RELIEF**
**(Negligent Misrepresentation – Against Statesville)**

118. Sandool realleges the preceding paragraphs.

119. Statesville supplied false, incomplete, misleading, and/or materially outdated information and confirmations regarding the future availability of integrated municipal sewer, potable water, and fire flow services to the Property from immediately adjacent Statesville infrastructure.

19

120. Statesville supplied such information and confirmations for the guidance of Sandool, developers, purchasers, and other parties involved in the residential development of the Property in connection with decisions whether to acquire, annex, rezone, market, contract for, finance, and develop the Property.

121. Statesville failed to exercise reasonable care in obtaining, communicating, updating, correcting, and/or clarifying such information and confirmations, including by continuing to provide utility confirmations and development guidance without informing Sandool that Statesville allegedly would not provide unified integrated municipal utility service to the Property.

122. In particular, Statesville continued to provide utility-related guidance and confirmations concerning the Property, including the April 16, 2018 Letter to Serve and other encouragement and assurances.

123. Statesville knew or reasonably should have known that Sandool was continuing to expend substantial sums and pursue annexation, rezoning, marketing, and development activities in reliance upon the expectation that integrated municipal sewer, potable water, and fire flow services would ultimately be available from adjacent Statesville infrastructure.

124. Sandool justifiably relied on the information.

125. Sandool suffered damages as a result well in excess of $75,000.00.

126. Upon information and belief, Statesville has waived governmental immunity to the extent of applicable insurance coverage.

127. Further, upon information and belief, some or all of the conduct described herein arose from Statesville's proprietary operation and administration of municipal utility services.

20

128. Sandool realleges the preceding paragraphs.

129. Sandool had valid business relationships, contracts, negotiations, and prospective economic relationships with developers, purchasers, and others concerning the acquisition, financing, and residential and commercial development of portions of the Property.

130. Such relationships included, among others, contractual and development relationships involving South Creek Development and PK Development concerning contemplated residential and commercial development of portions of the Property utilizing integrated municipal sewer, potable water, and fire flow services from Statesville.

131. Upon information and belief, IWC knew of these relationships.

132. Upon information and belief, IWC intentionally interfered with these relationships and development expectations by asserting exclusive rights to provide potable water service to the Property while simultaneously conditioning such service upon fragmented, commercially unreasonable, economically impractical, and developmentally infeasible infrastructure, easement, and property dedication requirements.

133. Upon information and belief, IWC's conduct exceeded what was reasonably necessary to protect any legitimate utility interest and was commercially unreasonable under the circumstances, particularly given the existence of immediately adjacent Statesville infrastructure capable of providing integrated municipal sewer, potable water, and fire flow services to the Property.

134. Upon information and belief, IWC knew or reasonably should have known that the infrastructure, easement, and property dedication requirements imposed upon Plaintiff would

21

substantially impair the economic feasibility, profitability, and marketability of residential and commercial development of the Property.

135. As a result, Sandool suffered damages in an amount in well in excess of $75,000.00.

WHEREFORE, Sandool Investments, LLC respectfully requests that the Court:

1. Declare the respective rights, obligations, and service responsibilities of the parties concerning the Property under applicable federal and state law;

2. Declare that IWC has not made reasonably practical, economically feasible, and developmentally sufficient potable water service available to the Property within the meaning of applicable federal law, including 7 U.S.C. § 1926(b), 7 C.F.R. § 1942.17, and related authorities, and that Statesville may provide potable water and fire flow service to the Property from its immediately adjacent infrastructure;

3. Declare that IWC may not invoke federal exclusivity protections with respect to the Property while failing to make adequate and reasonable service available to the Property as required by applicable federal law;

4. Enter temporary, preliminary, and permanent injunctive relief as may be necessary to permit practical and economically feasible integrated municipal sewer, potable water, and fire flow services to the Property from Statesville's immediately adjacent infrastructure;

5. Enter such preliminary and permanent injunctive relief as may be necessary to declare and enforce IWC's obligations under applicable federal law, including 7 U.S.C. § 1926(b), 7 C.F.R. § 1942.17, and related USDA Rural Development requirements;

22

6. Declare that Plaintiff is entitled to seek relief under 7 C.F.R. § 1942.17 arising from IWC's failure to make adequate and reasonable potable water service available to the Property;

7. Award Plaintiff such consequential damages as may be proven at trial arising from Defendants' conduct, Statesville's representations, the restrictions imposed by the settlement agreement, and the commercially unreasonable conditions imposed for utility service to the Property;

8. Award Plaintiff its costs incurred herein;

9. Award attorneys' fees as permitted by law;

10. For a trial by jury for all issues so triable;

11. Plaintiff seeks a practical resolution that permits reasonably practical, economically feasible, and integrated utility service to the Property in a commercially reasonable manner consistent with applicable federal and state law and the expectations created during the annexation and rezoning process; and

12. To that end, grant such other, further, and equitable relief as the Court deems just and proper.

This the _____ day of June, 2026.

> /s/ Amiel J. Rossabi
> North Carolina State Bar No. 16984
> *Attorney for Plaintiff*
> ROSSABI LAW PLLC
> 445 Dolley Madison Road, Suite 200
> Greensboro, North Carolina  27410
> Telephone:  (336) 895-4350
> Email:  arossabi@r2kslaw.com